**BARMET ALUMINUM CORPORATION, Plaintiff,**

v.

**Lee M. THOMAS, as Administrator of the United States Environmental Protection Agency, et al., Defendants.**

No. 88–0173–0(BM).

United States District Court, W.D. Kentucky, Owensboro Division.

Feb. 20, 1990.

**772**

David L. Yewell, Rummage, Kamuf, Yewell, Pace & Condon, Owensboro, Ky., for Barmet Aluminum Corp.

Richard A. Dennis, Asst. U.S. Atty., Louisville, Ky., and Judith E. Moverman, U.S. E.P.A., Region IV, Atlanta, Ga., for Lee M. Thomas and Greer Tidwell.

Robert J. Ehrler, Dept. of Law, Frankfort, Ky., for Carl Bradley.

MEMORANDUM

BOYCE F. MARTIN, Jr., Circuit Judge, Sitting by Designation.

Barmet Aluminum Corporation has brought this action under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. §§ 9601–9675 (as amended by the Superfund Amendments and Reauthorization Act of 1986, Pub.L. No. 99–499, 100 Stat. 1613 *et seq.* (1986)), more commonly known as the Superfund Act. The defendants have filed motions to dismiss for lack of subject matter jurisdiction, and those motions are granted.

Barmet is an Ohio corporation and operates a secondary aluminum recycling plant and rolling mill facility in Livia, Kentucky. Defendant Lee Thomas is the Administrator of the Environmental Protection Agency and Defendant Greer Tidwell is the Regional Administrator of the Environmental Protection Agency. Defendant Carl Bradley is the Secretary of the Kentucky Natural Resources and Environmental Protection Cabinet.

Barmet's Livia plant recycles aluminum, producing a byproduct of secondary aluminum dross. From 1977 to 1981, Barmet disposed of the dross by placing it in the seven acre Brantley Landfill near Island, Kentucky. Since 1981, Barmet has placed its dross in a 120 acre underground limestone facility known as the Fort Hartford site. The Fort Hartford site is controlled by the Fort Hartford Coal Company, which has responsibility under its contract with Barmet for the proper storage of the dross.

The Livia plant, the Brantley Landfill, and the Fort Hartford site are all subject to the regulatory authority of the EPA under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("Superfund"), 42 U.S.C. § 9601 *et seq.*, and the National Oil and Hazardous Substances Contingency Plan, 40 C.F.R. § 300 *et seq.*

On June 24, 1988, the EPA added the Brantley Landfill and the Fort Hartford site, along with 227 other sites, to the National Priorities List. Barmet filed comments opposing the final addition of the Brantley Landfill and the Fort Hartford site to the National Priorities List. The National Priorities List is the EPA's list of sites that "appear to warrant remedial actions." S.Rep. No. 848, 96th Cong., 2d Sess. 60 (1980), *reprinted in* 1 Senate Comm. on Environment & Public Works, 97th Cong., 2d Sess., *A Legislative History of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980* at 367 (Comm. Print 1983). A "remedial action" is a long-term remedy for damage from release of a hazardous substance. The EPA only spends Superfund money for remedial actions at sites that have been included on the National Priorities List. 40 C.F.R. § 300.66(c)(2), 300.68(a). In contrast, the EPA may spend Superfund money on short-term "removal" actions to assess or minimize environmental damage at a site, regardless of whether the site is on the National Priorities List. Removal actions include information gathering such as a remedial investigation/feasibility study. 42 U.S.C. § 9604.

Although no final decision has been made regarding placement of the Brantley Landfill and the Fort Hartford site on the National Priorities List, the EPA contacted Barmet, as a potentially responsible party under the Superfund Act, in a letter dated December 29, 1988. In this letter, the EPA advised Barmet of its potential liability for clean-up costs as a generater of waste at

the sites under 42 U.S.C. § 9607. The EPA invited Barmet to help conduct a remedial investigation/feasibility study. Barmet asserts that the costs of these studies would be $1,750,000.00 for the two sites.

Barmet filed this lawsuit on November 8, 1988. Barmet seeks a preliminary injunction prohibiting any further action toward a proposed listing of the sites on the National Priorities List until the EPA has responded to Barmet's comments. Barmet also seeks a permanent injunction prohibiting the defendants from listing the Brantley Landfill or the Fort Hartford site on the National Priorities List, or from classifying Barmet's dross as hazardous material or waste.

The defendants have moved to dismiss Barmet's action for lack of subject matter jurisdiction and on other grounds. The defendants argue that under the Superfund Act, the decision to list a site on the National Priorities List is a rulemaking proceeding, not an adjudication. In a rulemaking proceeding, Barmet has no right to a hearing. Further, the defendants argue that the Superfund Act expressly provides for review of the issues pertaining to an National Priorities List listing only in the United States Court of Appeals for the District of Columbia. 42 U.S.C. § 9613(a). Finally, the defendants argue that no party may challenge a removal or remedial action under the Superfund Act until response action has been "taken," in order to avoid delaying the clean-up of hazardous sites. 42 U.S.C. § 9613(h). Barmet agrees with the defendants' general characterization of the Superfund Act, but argues that this court has subject matter jurisdiction because the actions now taken by the EPA allegedly deprive Barmet of its due process rights under the Constitution. Barmet essentially asserts that the EPA is trying to whipsaw it into agreeing to pay for any clean-up of the Brantley Landfill and the Hartford Site without ever going to the expense of a cost recovery action. The EPA may perform a "remedial investigation/feasibility study" on the Brantley Landfill and the Hartford Site without ever consulting the owners of the site or anyone who has provided materials that are placed there. Before the EPA may require any of these companies to pay for the study or any subsequent clean-up, it must accord them due process by listing them on the National Priorities List and commence an action under the Superfund Act. 42 U.S.C. §§ 9606–9607. Although these sites are not yet listed on the National Priorities List, Barmet alleges that the EPA has used their proposed listing to threaten daily penalties to force Barmet to give evidence against itself and to join in negotiations for the study. The result, Barmet contends, is a violation of its due process rights.

■ To begin with, this court is simply without subject matter jurisdiction to hear the claim. *South Macomb Disposal Authority v. EPA*, 681 F.Supp. 1244 (E.D. Mich.1988). After the enactment of the Superfund Act, federal courts disagreed as to whether they had subject matter jurisdiction over preemptive constitutional challenges to EPA action. *Compare, e.g., Lone Pine Steering Comm. v. EPA*, 600 F.Supp. 1487 (D.N.J.1985) (holding that such challenges were barred), *aff'd*, 777 F.2d 882 (3d Cir.1985), *cert. denied*, 476 U.S. 1115, 106 S.Ct. 1970, 90 L.Ed.2d 654 (1986), *with SCA Services of Indiana v. Thomas*, 634 F.Supp. 1355 (N.D.Ind.1986) (holding that some challenges could be allowed). Congress resolved this conflict with the Superfund Amendments and Reauthorization Act of 1986. The SARA amendments to the Superfund Act provided that district courts would have exclusive jurisdiction over Superfund cases except as provided in section 9613(a), (h). 42 U.S.C. § 9613(b). In 42 U.S.C. § 9613(h), the Superfund Act now states:

No Federal court shall have jurisdiction under Federal law other than [diversity jurisdiction] ... to review any challenges to removal or remedial action selected under section 9604 ..., in any action except one of the following:

(1) An action under section 9607 to recover response costs or damages or for contribution.

(2) An action to enforce an order issued under section 9606(a) or to recover a penalty for violation of such order.

(3) An action for reimbursement under section 9606(b)(2)....

(4) An action under section 9659 (relating to citizens suits) alleging that the removal or remedial action taken under section 9604 ... or secured under section 9606 ... was in violation of any requirement of [the Superfund Act]. Such an action may not be brought with regard to a removal where a remedial action is to be undertaken at the site.

The plain language of these exceptions, as Barmet admits, clearly does not include a constitutional challenge. In addition, a constitutional challenge does not merit a special exclusion from this requirement. Indeed, a Senate Report has cited with approval the *Lone Pine* case that held that constitutional challenges also could not be brought prior to government enforcement or cost recovery action. S.Rep. No. 11, 99th Cong. 1st Sess. 58 (1985), *quoted in J.V. Peters & Co. v. Administrator, EPA,* 767 F.2d 263, 265 (6th Cir.1985).

The Superfund Act's primary purpose is the prompt clean-up of environmentally hazardous waste sites, and to allow a pre-emptive challenge to EPA clean-up action would "debilitate the central function of the Act." *J.V. Peters & Co.,* 767 F.2d at 264. The same result occurs even if that challenge is based on the Constitution. *South Macomb Disposal Authority v. EPA,* 681 F.Supp. 1244, 1251 (E.D.Mich. 1988). In order to speed the clean-up, the Superfund Act allows the EPA to bifurcate the clean-up of a hazardous waste site from the time-consuming liability and cost recovery legal actions. The EPA may engage in the study by itself to determine the need for and feasibility of clean-up of the site. Although Barmet has not been finally placed on the National Priorities List, such placement is irrelevant to the EPA's actions thus far. The EPA may conduct a study even if a site is never placed on the National Priorities List. As a result, the actions taken by the EPA are independent of any potential liability by Barmet.

■ The mere fact that the EPA invites potential responsible parties to participate in a study does not violate due process.

Although this invitation places such parties in the difficult position of assessing their chances in a future law suit, this dilemma is not a violation of due process. On the contrary, it presents parties with an opportunity to reduce their potential liability.

Because this court lacks subject matter jurisdiction, it need not address the other motions before the court. For the above stated reasons the complaint is dismissed.