927 F.2d 289
 32 ERC 1745, 59 USLW 2567, 21 Envtl.
L. Rep. 20,850
 BARMET ALUMINUM CORPORATION, Plaintiff-Appellant,
v.
William K. REILLY, Administrator, United States
Environmental Protection Agency; Greer C. Tidwell, Regional
Administrator, Region IV, United States Environmental
Protection Agency; Carl Bradley, Secretary, Kentucky
Natural Resources and Environmental Protection Cabinet, a
Statutory Cabinet of the Commonwealth of Kentucky,
Defendants-Appellees.
 No. 90-5435.
 United States Court of Appeals,
Sixth Circuit.
 Argued Jan. 31, 1991.
Decided March 7, 1991.
 
 David L. Yewell (argued), Rummage, Kamuf, Yewell, Pace & Condon, Owensboro, Ky., for plaintiff-appellant.
 Michael F. Spalding, Asst. U.S. Atty., Louisville, Ky., Robert J. Ehrler, Timothy J. Salansky, Natural Resources & Environmental Protection Cabinet, Dept. of Law, Frankfort, Ky., Judith Moverman, Asst. Reg. Counsel, U.S.E.P.A., Region IV, Atlanta, Ga., for Greer C. Tidwell and Carl Bradley.
 Richard A. Dennis and Michael F. Spalding, Asst. U.S. Attys., Louisville, Ky., Robert L. Klarquist, Evelyn S. Ying (argued), U.S. Dept. of Justice, Land & Natural Resources Div., Washington, D.C., Robert J. Ehrler, Natural Resources & Environmental Protection Cabinet, Frankfort, Ky., Judith Moverman, Asst. Reg. Counsel, U.S.E.P.A., Region IV, Zylpha K. Pryor, U.S. E.P.A., Associate Regional Counsel, Atlanta, Ga., for William K. Reilly.
 Before MILBURN and GUY, Circuit Judges, and BROWN, Senior Circuit Judge.
 RALPH B. GUY, Jr., Circuit Judge.
 
 
 1
 Barmet Aluminum Corporation (Barmet) appeals the district court's grant of defendants' motion to dismiss for lack of subject matter jurisdiction. 730 F.Supp. 771. The district court held that it was without jurisdiction to entertain Barmet's action against the Environmental Protection Agency (EPA) and Kentucky's Natural Resources and Environmental Protection Cabinet under the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA or Superfund), as amended by the Superfund Amendments and Reauthorization Act of 1986 (SARA or 1986 Amendments), codified at 42 U.S.C. Sec. 9601 et seq., before the EPA had commenced enforcement through administrative orders or cost recovery proceedings.
 
 
 2
 Barmet argues that because its challenge to CERCLA is constitutional, the general proscriptions against pre-enforcement review are inapplicable. In the alternative Barmet argues that, even if CERCLA can be interpreted to preclude pre-enforcement review, Congress is without power to remove jurisdiction from constitutional challenges to statutory schemes violative of due process. Finally, Barmet argues that CERCLA is unconstitutional because it "forces" individuals that the EPA has identified as potentially responsible (potentially responsible parties or PRPs) for an environmental hazard to expend resources for expensive, remedial feasibility studies before they have had the opportunity to contest their responsibility, and also because CERCLA provides no meaningful way to contest their liability. We find no merit to plaintiff's arguments and, accordingly, affirm.
 
 I.
 
 3
 The facts of this case are not in dispute. Barmet is an Ohio corporation that operates a secondary aluminum recycling plant and rolling mill facility in Livia, Kentucky. Barmet's Livia plant recycles aluminum, producing a by-product of secondary aluminum dross. From 1977 to 1981, Barmet disposed of the dross by placing it in a seven-acre Brantley landfill near Island, Kentucky. Since 1981, Barmet has placed its dross in a 120-acre underground limestone facility known as the Fort Hartford site. The Fort Hartford site is controlled by the Fort Hartford Coal Company, which has responsibility under its contract with Barmet for the proper storage of the dross.
 
 
 4
 On June 24, 1988, the EPA published a proposed regulation listing both the Brantley landfill and the Fort Hartford sites on the National Priorities List (NPL), a list of high priority hazardous waste sites, under CERCLA. Barmet filed comments with the EPA objecting to the proposed listing of both sites because, they argued, aluminium dross is not a hazardous waste material within the meaning of CERCLA.
 
 
 5
 In August of 1988, the EPA informed Barmet that it was going to send Barmet a letter indicating that it thought Barmet was a PRP and providing Barmet with an opportunity to conduct a study of remedial alternatives for both sites. Before the receipt of such letter, Barmet filed for injunctive relief to prevent the EPA from listing either site on the NPL. In December 1988, EPA formally notified Barmet that it was a PRP for the sites and invited Barmet to enter into negotiations with EPA and other PRPs to undertake the remedial investigation voluntarily.
 
 II.
 
 6
 CERCLA, as amended by SARA, provides a statutory scheme for cleaning up hazardous substances. These laws allow the EPA to undertake direct removal or remedial action to protect the public health or welfare or the environment when it determines that release of a hazardous substance poses an imminent and substantial danger. CERCLA's primary purpose is " 'the prompt cleanup of hazardous waste sites.' " J.V. Peters & Co. v. EPA, 767 F.2d 263, 264 (6th Cir.1985) (quoting Walls v. Waste Resource Corp., 761 F.2d 311, 318 (6th Cir.1985)).
 
 
 7
 Removal refers to short-term action taken to halt any immediate risks posed by hazardous wastes. Removal includes such actions as "may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances, the disposal of removed material, or the taking of such other actions as may be necessary to prevent, minimize, or mitigate damage to the public health or welfare or to the environment...." 42 U.S.C. Sec. 9601(23); see 40 C.F.R. Sec. 300.6. Remedial action refers to permanent remedies taken instead of or in addition to removal action. 42 U.S.C. Sec. 9601(24); see 40 C.F.R. Sec. 300.6.
 
 
 8
 Removal action occurs before remedial action is taken. At this time, the site is studied and various cleanup alternatives are considered. The resulting site-specific study is called a Remedial Investigation/Feasibility Study (RI/FS). This study may be performed by either the EPA or a PRP, provided the EPA has determined that the PRP will "properly and promptly" perform the study. 42 U.S.C. Sec. 9604(a)(1).[1] Under section 9622, the EPA may enter into negotiations to allow PRPs to conduct the RI/FS and the actual cleanup of the site. "Whenever practicable and in the public interest, [EPA] shall act to facilitate agreements under this section that are in the public interest and consistent with the National Contingency Plan in order to expedite effective remedial actions and minimize litigation." 42 U.S.C. Sec. 9622(a). An RI/FS may be conducted for sites which are not on the National Priorities List.[2]
 
 
 9
 The term enforcement is not explicitly defined by the statute but has been interpreted to include actions under CERCLA sections 106 and 107, 42 U.S.C. Secs. 9606 and 9607, respectively. Section 9606 enables the EPA to take actions and issue orders necessary to abate "an imminent and substantial endangerment to the public health or welfare or the environment" due to the release of hazardous substances. 42 U.S.C. Sec. 9606. Section 9607 governs establishing liability for hazardous waste releases. This section is used by the EPA to obtain reimbursement for costs incurred in removal or remedial actions. Thus, pre-enforcement judicial review is "judicial review of EPA actions prior to the time that the EPA or a third party undertakes a legal action to enforce an order or to seek recovery of costs for the cleanup of a hazardous waste site." Reardon v. United States, 922 F.2d 28, 30, n. 4 (1st Cir.1990) (1990 WL 209207).
 
 
 10
 Title 42 U.S.C. Sec. 9613 governs civil proceedings related to CERCLA and SARA. In SARA, Congress chose to amend this section to include a provision on the timing of judicial review. Section 9613(h), timing of review, reads as follows:
 
 
 11
 No Federal court shall have jurisdiction under Federal law other than under section 1332 of Title 28 (relating to diversity of citizenship jurisdiction) or under State law which is applicable or relevant and appropriate under section 9621 of this title (relating to cleanup standards) to review any challenges to removal or remedial action selected under section 9604 of this title, or to review any order issued under section 9606(a) of this title, in any action except one of the following:
 
 
 12
 (1) An action under section 9607 of this title to recover response costs or damages or for contribution.
 
 
 13
 (2) An action to enforce an order issued under section 9606(a) of this title or to recover a penalty for violation of such order.
 
 
 14
 (3) An action for reimbursement under section 9606(b)(2) of this title.
 
 
 15
 (4) An action under section 9659 of this title (relating to citizens suits) alleging that the removal or remedial action taken under section 9604 of this title or secured under section 9606 of this title was in violation of any requirement of this chapter. Such an action may not be brought with regard to a removal where a remedial action is to be undertaken at the site.
 
 
 16
 (5) An action under section 9606 of this title in which the United States has moved to compel a remedial action.
 
 
 17
 Also, any review of regulations promulgated pursuant to CERCLA must occur in the United States Court of Appeals for the District of Columbia. 42 U.S.C. Sec. 9613(a).
 
 III.
 
 18
 Barmet argues that the statutory language does not preclude constitutional challenges to CERCLA. Under 42 U.S.C. Sec. 9613(b), federal district courts are given original jurisdiction in controversies arising under CERCLA, subject to the provisions of section 9613(a) and (h). As previously noted, section 9613(h) bars review prior to enforcement action by EPA with several enumerated exceptions. Barmet does not contend that any specific exception applies. Rather, Barmet argues that this statutory prohibition applies only to "administrative decisions" and not "constitutional challenge[s] to the entire CERCLA statutory scheme." In support of its position, Barmet cites several decisions holding that CERCLA does not bar constitutional challenges prior to EPA enforcement. These decisions were all rendered before SARA, which amended CERCLA to include the addition of section 9613(h).
 
 
 19
 In contrast, EPA argues that Congress passed section 9613(h) to foreclose interpretations allowing pre-enforcement review of constitutional challenges. We agree.
 
 
 20
 Before SARA, there were two conflicting lines of cases interpreting the power of a district court to entertain constitutional challenges to CERCLA prior to any enforcement action by EPA. Compare Aminoil, Inc. v. EPA, 599 F.Supp. 69, 72 (C.D.Cal.1984) (finding subject matter jurisdiction) and SCA Serv. of Indiana, Inc. v. Thomas, 634 F.Supp. 1355, 1359 (N.D.Ind.1986) with Lone Pine Steering Comm. v. EPA, 600 F.Supp. 1487 (D.N.J.1985) (holding that there was no subject matter jurisdiction), aff'd, 777 F.2d 882 (3d Cir.1985), cert. denied, 476 U.S. 1115, 106 S.Ct. 1970, 90 L.Ed.2d 654 (1986).
 
 
 21
 Our circuit, in J.V. Peters & Co. v. EPA, 767 F.2d 263 (6th Cir.1985), held that there was no cause of action to challenge EPA's actions under CERCLA before EPA sued for liability under 42 U.S.C. Sec. 9607(a). The plaintiffs in J.V. Peters claimed that lack of pre-enforcement review violated their due process rights. We held that the plaintiffs "can suffer no deprivation until the adjudication of the section 107 litigation ... and they will have full opportunity to argue liability at that time." Id. at 266.
 
 
 22
 In light of our conclusion in J.V. Peters and Congress' subsequent enactment of section 9613(h), a provision which clearly takes away federal jurisdiction prior to EPA enforcement, we are, necessarily, predisposed against Barmet's argument for jurisdiction. Nonetheless, we will address the arguments Barmet raises.
 
 
 23
 Notably, the statutory language of section 9613(h) does not include any explicit provision for constitutional challenges. In addition, the legislative history does not support Barmet's argument. Indeed, a Senate Report cited the Lone Pine case with approval in a discussion on pre-enforcement review:
 
 
 24
 Response actions or orders under section 104 and orders under section 106 may be subject to judicial review at the time the government seeks cost recovery or acts to enforce the order and collect penalties for noncompliance. This amendment clarifies and confirms that response actions and orders are not subject to judicial review prior to that time.
 
 
 25
 As several courts have noted, the scheme and purposes of CERCLA would be disrupted by affording review of orders or response actions prior to commencement of a government enforcement or cost recovery action. See, e.g., Lone Pine Steering Committee v. EPA, 22 Env't Rep.Cas. (BNA) [1113] 1118 (D. N.J. January 21, 1985). These cases correctly interpret CERCLA with regard to the unavailability of pre-enforcement review. This amendment [i.e., the addition of Sec. 9613(h) ] is to expressly recognize that pre-enforcement review would be a significant obstacle to the implementation of response actions and the use of administrative orders. Pre-enforcement review would lead to considerable delay in providing cleanups, would increase response costs, and would discourage settlements and voluntary cleanups.
 
 
 26
 S.Rep. No. 11, 99th Cong., 1st Sess. 58 (1985).
 
 
 27
 As further indication of Congress' intent to preclude review of constitutional issues, this Senate Report continued:
 
 
 28
 The new procedures set forth in this amendment are designed simply to increase the incentive for potentially responsible parties to undertake response actions. This amendment is not necessitated by any constitutional infirmity of section 106, as enacted in 1980, which already affords adequate protection of potentially responsible parties' due process.
 
 
 29
 Id. at 58-59. A House Report echos the same desire to foreclose pre-enforcement review: "there is no right of judicial review of the Administrator's selection and implementation of response actions until after the response action[s] have been completed to their completion." H.R.Rep. No. 253(I), 99th Cong., 2d Sess. 81, reprinted in 1986 U.S.Code Cong. & Admin.News 2835, 2863.
 
 
 30
 Moreover, CERCLA was designed so that EPA could respond promptly to environmental hazards. Pre-enforcement judicial review thwarts that purpose. As the Seventh Circuit recently noted, "challenges to the procedure employed in selecting a remedy nevertheless impact the implementation of the remedy and result in the same delays Congress sought to avoid by passage of the statute; the statute necessarily bars these challenges. The judicial review itself slows the process down." Schalk v. Reilly, 900 F.2d 1091, 1097 (7th Cir.1990).
 
 
 31
 The bar of pre-enforcement review also serves other objectives, e.g., avoiding piecemeal litigation and conserving EPA's limited resources. Voluntary Purchasing Groups, Inc. v. Reilly, 889 F.2d 1380, 1390 (5th Cir.1989). Each hazardous waste site may involve numerous PRPs. Allowing each PRP to sue prior to EPA's suit for enforcement would result in piecemeal litigation.
 
 
 32
 Additionally, and perhaps more importantly, each party initially identified as a PRP is not necessarily ultimately sued. For example, in Voluntary Purchasing Groups, only seven of the ten PRPs were sued. Id. at 1390. Barmet is one of four PRPs for the Brantley landfill and one of six PRPs for the Fort Hartford site. Thus, it is not certain that Barmet will ever be asked to pay for any removal or remedial actions.[3] To force EPA to litigate prior to its decision to sue, simply wastes EPA's limited resources, when such litigation involves parties who would not be sued ultimately.
 
 IV.
 
 33
 Barmet further argues that even if the statute, properly interpreted, contained a bar to constitutional challenges, Congress is without power to restrict the jurisdiction of the courts in a manner which would have the effect of violating PRPs' due process rights. Barmet's argument is untenable unless it can be shown that the pre-enforcement jurisdictional bar violates due process.
 
 
 34
 Importantly, Barmet may contest liability for the RI/FS and the ultimate cleanup measures after EPA commences enforcement. Barmet objects to the sufficiency of this review for several reasons. First, if EPA conducts the RI/FS study, it will not have "any meaningful curb on its expense." A similar argument was made and rejected in J.V. Peters. "The government's right to recover, however, will be limited by the requirement that costs be 'not inconsistent with the national contingency plan' ... [which requires] remedial action measures be cost-effective." 767 F.2d at 266 (citation omitted); see 42 U.S.C. Sec. 9605(7). This provision was not changed by SARA.
 
 
 35
 Recently, the EPA promulgated a rule clarifying the statutory mandate that remedial actions be cost-effective. Specifically, the EPA rejected several commentators' suggestions that cost-effectiveness be considered only for the implementation of a remedy and not in the selection of a remedy itself. "Under the proposal and today's rule, cost is considered in making two statutory determinations required for selected remedies: that the remedy is cost-effective (i.e., the remedy provides effectiveness proportional to its cost) and that it utilizes permanent solutions and treatment to the maximum extent practicable." 55 Fed.Reg. 8,726 (1990). Thus, Barmet's argument that EPA's removal and remedial actions will be conducted without regard to cost is controverted by both CERCLA's language and the policy supporting its accompanying regulations.
 
 
 36
 Barmet also argues that CERCLA's "draconian limitations on judicial review ... do[ ] not provide a meaningful chance to contest the expenditures of the EPA." Barmet objects, in particular, to the limitation of post-enforcement judicial review to the administrative record. See 42 U.S.C. Sec. 9613(j).
 
 
 37
 Importantly, section 9613(j) does not foreclose the addition of materials to supplement the administrative record. "Otherwise applicable principles of administrative law shall govern whether any supplemental materials may be considered by the court." 42 U.S.C. Sec. 9613(j). Also, given the volume of material relevant to removal and remedial selection contained in the administrative record, PRPs should seldom have the need to supplement the record. EPA recently promulgated 40 C.F.R. Sec. 300.810, contents of the administrative record file, which specifies the following:
 
 
 38
 (a) Contents. The administrative record file for selection of a response action typically, but not in all cases, will contain the following types of documents:
 
 
 39
 (1) Documents containing factual information, data and analysis of the factual information, and data that may form a basis for the selection of a response action.... In addition, for remedial actions, such documents may include approved workplans for the remedial investigation/feasibility study ... and the RI/FS;
 
 
 40
 (2) Guidance documents, technical literature, and site-specific policy memoranda that may form a basis for the selection of the response action....
 
 
 41
 (3) Documents received, published, or made available to the public under Sec. 300.815 for remedial actions, or Sec. 300.820 for removal actions....
 
 
 42
 (4) Decision documents....
 
 
 43
 (5) Enforcement orders....
 
 
 44
 55 Fed.Reg. 8,860 (1990) (codified at 40 C.F.R. Sec. 300.810). In fact, the only documents specifically excluded from the administrative record include those documents that "do not form a basis for the selection of the response action." Id.
 
 
 45
 Barmet cites a recent district court decision for support of its position that the unavailability of pre-enforcement review violates due process. Reardon v. United States, 731 F.Supp. 558 (D.Mass.1990). The First Circuit recently rendered an opinion in the Reardon case. Reardon v. United States, 922 F.2d 28 (1st Cir.1990). Although the First Circuit also held that due process required that plaintiffs in that case have pre-enforcement review available, the decision emphasized the limited circumstances in which pre-enforcement review is necessary.
 
 
 46
 In Reardon, the plaintiffs sought to enjoin the imposition of a lien on their property until a due process hearing could be held. Title 42 U.S.C. Sec. 9607(l )(1) provides that "[a]ll costs and damages for which a person is liable to the United States under [CERCLA] shall constitute a lien in favor of the United States upon all real property...." After EPA completed its removal action, EPA filed a notice of a lien on the Reardon property and proposed that the Reardons could settle the issue for over $300,000.
 
 
 47
 In its decision, the Reardon court emphasized that "[b]y this time ... it is clear and incontrovertible that, in enacting CERCLA Sec. 113(h) [Sec. 9613(h) ], Congress intended to bar all pre-enforcement judicial review of the EPA's choice of removal or remedial actions." Id. at 31. As a result, the Reardon court reasoned that, if a lien could be included under the definition of a removal or remedial action, then there could be no pre-enforcement review. Id.
 
 
 48
 The Reardon court subsequently concluded that a lien could not be called a removal or remedial action and that therefore the section 9613(h) bar to jurisdiction was inapplicable. The court stated that "[b]oth types of [removal or remedial] actions refer to on-site action taken by the EPA to contain, control, and dispose of hazardous materials, and to protect the public from the effects of the pollutant. A lien, by contrast, is a step in the cost-recovery process." Id. Additionally, the court held that "[t]he imposition of a lien clearly affects a legal right and is in more urgent need of prompt judicial review." Id. at 32.
 
 
 49
 Although the Reardon plaintiffs obtained pre-enforcement review, the Reardon court's reasoning does not support Barmet's position. All of EPA's actions thus far, with regard to the Brantley and Fort Hartford sites, have been in no way "step[s] in the cost-recovery process." Rather, EPA has simply attempted to involve Barmet in the removal and remedial selection processes. None of Barmet's legal rights to contest liability have been adversely affected. Thus, an extrapolation of the Reardon result to the current case would distort the logic employed by the Reardon court.
 
 
 50
 The CERCLA statutory scheme, as amended by SARA, merely serves to effectuate a delay in a plaintiff's ability to have a full hearing on the issue of liability and does not substantively affect the adequacy of such a hearing. South Macomb Disposal Auth. v. EPA, 681 F.Supp. 1244 (E.D.Mich.1988), addressed the due process implications resulting from a delay in the availability of a hearing to contest liability:
 
 
 51
 [I]f Congress completely proscribed the federal courts from hearing a particular type of action, and no other relief was available, the action would violate the Due Process Clause of the Fifth Amendment.
 
 
 52
 This is not the situation here. Rather, Sec. 9613(h) only limits the time at which a constitutional challenge may be brought. This limitation does not absolutely withhold jurisdiction, since it only alters the character of judicial review.
 
 
 53
 Id. at 1251.
 
 
 54
 The Seventh Circuit recently addressed a similar due process claim in the CERCLA pre-enforcement context. In response to plaintiffs' sundry constitutional challenges to the lack of pre-enforcement review, the Seventh Circuit held:
 
 
 55
 These novel theories rest on undesirable expansions of the meaning of the Fifth Amendment, and we decline to adopt them. As we already have made clear, the plaintiffs in this matter and other interested citizens have received numerous opportunities for input into the process, and will receive more such opportunities in the future. No recognized constitutional rights are implicated.
 
 
 56
 Schalk v. Reilly, 900 F.2d 1091, 1098 (7th Cir.1990).
 
 
 57
 We find that plaintiff's due process rights are not implicated as a result of Congress' foreclosure of pre-enforcement review of CERCLA actions. Thus, we find no need to discuss the extent to which Congress can take away the jurisdiction of federal courts to hear constitutional claims.
 
 V.
 
 58
 Barmet also argues that CERCLA is unconstitutional because a PRP is "forced" to pay for an RI/FS before it can contest liability, and further argues that there is no meaningful way to contest liability. The latter issue has been thoroughly addressed in the previous section. Thus far, Barmet has not been "forced" to do anything. Specifically, it is not required to conduct an RI/FS. If, however, it is found that Barmet is liable after EPA conducts an RI/FS, it will be liable for EPA's costs. The invitation to conduct or participate in an RI/FS simply offers a PRP some input to the final remedial determination. As the district court aptly stated:
 
 
 59
 The mere fact that the EPA invites potential responsible parties to participate in a study does not violate due process. Although this invitation places such parties in the difficult position of assessing their chances in a future law suit, this dilemma is not a violation of due process. On the contrary, it presents parties with an opportunity to reduce their potential liability.
 
 
 60
 (730 F.Supp. 771, 774).
 
 
 61
 AFFIRMED.
 
 
 
 [1]
 42 U.S.C. Sec. 9604(a)(1) also provides that any PRP electing to undertake an RI/FS will not be given favorable treatment in terms of liability:
 In no event shall a potentially responsible party be subject to a lesser standard of liability, receive preferential treatment, or in any other way, whether direct or indirect, benefit from any such arrangements as a response action contractor, or as a person hired or retained by such a response action contractor, with respect to the release or facility in question.
 
 
 [2]
 The EPA recently addressed the interplay between the NPL and those sites for which RI/FS are conducted
 A site may undergo remedial action financed by the Trust Fund established under CERCLA ("Superfund") only after it is placed on the final NPL as outlined in the NCP at 40 CFR 300.66(c)(2) and 300.66(a). However, EPA may take enforcement actions under CERCLA or other applicable statutes against responsible parties regardless of whether the site is on the NPL, although, as a practical matter, the focus of EPA's enforcement actions has been and will continue to be on NPL sites. Similarly, in the case of removal actions, EPA has the authority to act at any site, whether listed or not, that meets the criteria of the NCP at 40 CFR 300.65-67.
 ....
 Although an RI/FS generally is conducted at a site after the site has been placed on the NPL, in a number of circumstances the Agency elects to conduct an RI/FS at a proposed NPL site in preparation for a possible CERCLA-financed remedial action, such as when the Agency believes that a delay may create unnecessary risks to human health or the environment. In addition, the Agency may conduct an RI/FS to assist in determining whether to conduct a removal or enforcement action at a site.
 
 
 [55]
 Fed.Reg. 9689 (1990)
 
 
 [3]
 Nor is Barmet required to expend any funds at this time if it chooses not to. See Section V., infra