F I L E D
United States Court of Appeals
Tenth Circuit

OCT 25 1999

PATRICK FISHER
Clerk

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

AZTEC MINERALS CORPORATION, )
GRAY EAGLE MINING CORPORATION, )
and SOUTH MOUNTAIN MINERALS )
CORPORATION, )
)
        Plaintiffs/Appellants, )   No. 98-1380
)   (D.C. No. 94-WM-2853
v. )   (D. Colorado)
)
UNITED STATES ENVIRONMENTAL )
PROTECTION AGENCY, CAROL )
BROWNER AS ADMINISTRATOR OF )
THE UNITED STATES ENVIRON- )
MENTAL PROTECTION AGENCY, and )
WILLIAM P. YELLOWTAIL AS )
REGIONAL ADMINISTRATOR OF )
REGION VIII OF THE UNITED STATES )
ENVIRONMENTAL PROTECTION )
AGENCY, )
)
        Defendants/Appellees. )

ORDER AND JUDGMENT[*]

Before **TACHA** and **KELLY**, Circuit Judges, and **WEST**, District Judge.[1]

---

[*]This Order and Judgment is not binding precedent, except under the doctrines of law of the case, res judicata and collateral estoppel. Citation of orders and judgments is generally disfavored; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[1]The Honorable Lee R. West, Senior United States District Judge for the Western District of Oklahoma, sitting by designation.

After examining the briefs and the appellate record, this three-judge panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Rule 34(a), F.R.App.P.; 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Plaintiffs/appellants Aztec Minerals Corporation, Gray Eagle Mining Corporation and South Mountain Minerals Corporation together own real property known as the Summitville Mine ("Mine") in Rio Grande County, Colorado. In 1984, the plaintiffs leased the Mine to Galactic Resources, Inc., and its subsidiary, Summitville Consolidated Mining Company, Inc. (collectively "Galactic"). Galactic obtained mining permits from the State of Colorado in order to operate a cyanide heap leach mine to recover precious metals from mine ore. As a result of Galactic's operations at the Mine, contaminated water was released into local creeks and streams.

In December 1992, Galactic sought protection under the federal bankruptcy laws and abandoned the Mine. The State of Colorado requested the United States Environmental Protection Agency ("EPA") to initiate an emergency response action at the Mine. The EPA determined that conditions at the Mine "present[ed] an immediate, and imminent and substantial threat to public health or welfare and the environment, and [met] the criteria for initiating a [r]emoval action . . . ." The EPA requested and received from the plaintiffs a written voluntary grant of access to the Mine, in order to undertake the necessary response actions.

The plaintiffs became concerned about the EPA's activities at the Mine and on April 15, 1994, revoked their consent to allow the EPA voluntary access to the Mine. In response, the EPA, on April 22, 1994, issued an Administrative Order for Access ("Access Order"), pursuant to Section 104(e) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), as amended, 42 U.S.C. § 9604(e).

The Access Order stated that access to the Mine "is required for the purpose of determining the appropriate response action and to effectuate response actions" at the Mine and "in order to determine whether conditions at the [Mine] . . . pose a threat to human health or the environment and to conduct appropriate response activities." The Access Order commanded the plaintiffs, inter alia,

(a)     to provide the EPA "full and unrestricted access" to the Mine;

(b)     to not "enter[] onto the access areas" without "written authorization from [the] EPA;"

(c)     to notify the EPA in writing "at least thirty (30) days before any conveyance of an interest in all or any portion" of the Mine;" and

(d)     to insure that any conveyance of any interest in the Mine by the plaintiffs provide for "continued access" by the EPA to conduct, without interference, its response activities.

On December 14, 1994, the plaintiffs filed suit against the EPA, its administrator, Carol Browner, and its regional administrator, William P. Yellowtail. In their amended

3

complaint, the plaintiffs alleged nine claims for relief. In four claims, the plaintiffs alleged two provisions of the Access Order violated CERCLA. In four more claims, the plaintiffs contended that the EPA's actions at the Mine violated the due process clause of the fifth amendment to the United States Constitution, and in one claim, the plaintiffs charged the EPA under both CERCLA and the fifth amendment with improperly removing valuable metals. The latter claim was voluntarily dismissed after the EPA provided the plaintiffs with an accounting of all metals removed from the Mine.

The defendants challenged the eight remaining claims by filing a Motion to Dismiss. Relying on Section 113(h) of CERCLA, 42 U.S.C. § 9613(h), the defendants argued that the district court lacked subject matter jurisdiction. The motion was referred to United States Magistrate Judge Bruce D. Pringle. On April 28, 1997, Magistrate Judge Pringle recommended the defendants' Motion to Dismiss be granted. The district court adopted the recommendation and dismissed the amended complaint. The plaintiffs appealed and upon de novo review of the record, we affirm.

CERCLA provides a comprehensive statutory scheme for cleaning up releases or threatened releases of hazardous substances. E.g., State of Colorado v. Idarado Mining Co., 916 F.2d 1486 (10th Cir. 1990). The EPA is authorized [2] to respond to any actual or

---

[2]CERCLA authorizes the President to act. That authority has in large part been delegated to the Administrator of the EPA. 42 U.S.C. § 9615; see Exec. Order No. 12,580, 52 Fed. Reg. 2923 (1987), as amended by Exec. Order No. 12,777, 56 Fed. Reg. 54,757 (1991) and Exec. Order No. 13,016, 61 Fed. Reg. 45,871 (1996).

substantial threat of a release of a hazardous substance into the environment by taking "removal" and/or "remedial" actions or "any other response measure . . . deem[ed] necessary to protect the public health or welfare or the environment." 42 U.S.C. § 9604(a)(1). "Removal actions" include "the cleanup or removal of released hazardous substances from the environment, . . . or . . . such other actions as may be necessary to prevent, minimize, or mitigate damage to the public health or welfare or to the environment . . . ." Id. § 9601(23). "The term includes, in addition, . . . security fencing or other measures to limit access . . . ," id., to the site at which the release or threatened release has occurred. "Remedial actions" include "those actions consistent with permanent remedy taken instead of or in addition to removal actions in the event of a release or threatened release of a hazardous substance into the environment, to prevent or minimize the release of hazardous substances . . . ." Id. § 9601(24). "Response actions" include both "removal" and "remedial" actions and all "enforcement activities related thereto." Id. § 9601(25).

Section 9613(h), upon which Magistrate Judge Pringle relied in recommending that the amended complaint be dismissed, provides:

> "No Federal court shall have jurisdiction under Federal law other than under section 1332 of Title 28 (relating to diversity of citizenship jurisdiction) or under State law which is applicable or relevant and appropriate under section 9621 of this title (relating to cleanup standards) to review any challenges to removal or remedial action selected under section 9604 of this title, or to review any order issued under section 9606(a) of this title, in any action except one of . . . [five listed categories of suits]."

5

Id. § 9613(h). The clear import of this section is that, with the exception of the five enumerated categories, none of which are applicable in this case, challenges to the EPA's removal and/or remedial activities are precluded until such activities are completed.

The plaintiffs have argued that section 9613(h) does not bar judicial review of the claims in the instant lawsuit because the plaintiffs "are not challenging the Access Order, per se," and because the two provisions of the Access Order about which they have complained, namely, the provisions which restrict access to, and transfer of, the property, are not part of a "removal" or "remedial" action. We disagree.

Unrestricted access to a site at which there has been a release or threatened release of a hazardous substance and/or unrestricted conveyances of any or all interests in such a site would significantly interfere with, and impede, the EPA's response activities at that site. The limitations imposed by the Access Order are necessary to protect public health or welfare and the environment. Therefore, the Access Order which is the subject of this case, constitutes a "removal" and/or "remedial" action, and judicial review of its provisions is precluded by section 9613(h).

Judicial review of the plaintiffs' claims that the EPA's activities at the Mine allegedly violate the due process clause of the fifth amendment to the United States Constitution is likewise barred. Section 9613(h) expressly identifies those categories of lawsuits which are exempt. The plaintiffs' constitutional claims, as set forth in their amended complaint, do not

6

fall within one of the exceptions.  See Barmet Aluminum Corp. v. Reilly, 927 F.2d 289 (6th Cir. 1991).

Finally, the plaintiffs have argued that because the harm they are allegedly suffering to their property and property rights is "irreparable," section 9613(h) does not bar review of their claims.  Again, we disagree.  Subject matter jurisdiction does not exist over lawsuits which challenge EPA removal or remedial actions before completion even where the plaintiffs have alleged irreparable injury.  E.g., Clinton County Commissioners v. United States Environmental Protection Agency, 116 F.3d 1018 (3d Cir. 1997)(en banc).

AFFIRMED.


Entered for the Court

Lee R. West
Senior District Judge