Joseph A. CEREGHINO; Mario Cereghino; Joseph Cereghino, as Personal Representative of the Estate of Angelo Cereghino, Plaintiffs,

v.

The BOEING COMPANY, a Delaware corporation; International Controls Corporation, an Oregon corporation; Datron Systems, Inc., a New Jersey corporation; Elecspec Corporation, aka Elecspec International, Inc., aka Electronic Specialty Corporation, a Washington corporation, Defendants.

Civ. No. 92–247–JE.

United States District Court,
D. Oregon.

May 10, 1993.

Thomas H. Tongue, Michael J. Francis, John C. DeVoe, Dunn, Carney, Allen, Higgins & Tongue, Portland, OR, for plaintiffs.

Paul T. Fortino, David A. Bledsoe, Perkins Coie, Portland, OR, Mark W. Schneider, Perkins Coie, Seattle, WA, for defendant Boeing Co.

Joan P. Snyder, Loius A. Ferreira, Stoel Rives Boley Jones & Grey, Portland, OR, for defendants Datron Systems, Inc. and International Controls Corp.

## ORDER

FRYE, District Judge:

The Honorable John Jelderks, United States Magistrate Judge, filed Findings and Recommendation on March 5, 1993. The plaintiffs filed timely objections to the Findings and Recommendation. When either party objects to any portion of a magistrate's Findings and Recommendation, the district court must make a *de novo* determination of that portion of the magistrate's report. 28 U.S.C. § 636(b)(1); *McDonnell Douglas Corp. v. Commodore Business Machines, Inc.,* 656 F.2d 1309, 1313 (9th Cir.1981), *cert. denied,* 455 U.S. 920, 102 S.Ct. 1277, 71 L.Ed.2d 461 (1982). The matter is before this court pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed.R.Civ.P. 72(b).

This court has, therefore, given *de novo* review of the rulings of Magistrate Judge Jelderks. This court ADOPTS the Findings and Recommendations of Magistrate Judge Jelderks dated March 5, 1993 in its entirety.

IT IS HEREBY ORDERED that the motion for partial summary judgment of defendant The Boeing Company (# 32) is GRANTED; the motion for summary judgment of defendant Datron Systems, Inc. (# 38) is GRANTED; and the motion for summary judgment of defendant International Controls Corporation (# 43) is GRANTED.

## FINDINGS AND RECOMMENDATION

JELDERKS, United States Magistrate Judge:

Plaintiffs Joseph A. Cereghino, on his own behalf and as personal representative of the estate of Angelo Cereghino, and Mario Cereghino (collectively Cereghinos) bring this action, based on the release of certain chemicals, against the Boeing Company (Boeing), International Controls Corporation (ICC), Datron Systems, Inc. (Datron), and Elecspec Corporation (Elecspec). Boeing moves for partial summary judgment. ICC and Datron move for summary judgment. These motions should be granted.

## BACKGROUND

The Cereghinos own farmland in Multnomah County, Oregon, located on the north side of Northeast Sandy Boulevard near the intersection of Northeast 185th Avenue and Sandy Boulevard. Industrial activities giving rise to this action began in 1964 on the south side of Sandy Boulevard, opposite the Cereghinos' land. At that time, Electronic Specialty Company (ESC), which is not a party to this action, began to operate a manufacturing facility on the site. ESC later became a subsidiary of ICC. Until 1971, ESC performed heavy manufacturing operations in one part of a plant on the site, and fabricated and assembled electronics equipment in another part.

In 1971, Radiation International, Inc. (RII), another ICC subsidiary which is not a party to this action, assumed ESC's heavy manufacturing operations. RII continued that work until Boeing assumed those operations when it began leasing the industrial site in 1974. Another ICC subsidiary, defendant Datron, took over ESC's electronics work in 1971, and manufactured electronic components on the site until 1983. From 1983 to 1985, defendant Elecspec operated the electronics manufacturing facility. Boeing, which purchased the industrial site in 1979, began operating the electronics part of the facility in 1985. It has operated both the heavy manufacturing and electronics facilities since that time.

In early 1986, Boeing discovered that groundwater on the industrial site contained hazardous industrial solvents. It reported this finding to the United States Environmental Protection Agency, and to the Oregon Department of Environmental Quality. In July 1986, Boeing entered into a Consent Order and Compliance Agreement with those agencies. It has been investigating the contamination and taking remedial action since that time. Boeing has also supplied the Cereghinos with water for drinking, irrigation, and other farm uses for the past several years.

In August 1986, the Cereghinos were notified that the groundwater in their land was contaminated with trichloroethylene (TCE). They subsequently learned that TCE and trichloroethane (TCA) had migrated into their groundwater from neighboring property. TCE and TCA are industrial solvents used as degreasers and in preparation for painting. These compounds are listed as hazardous wastes under the Federal Resource, Conservation and Recovery Act. 40 C.F.R. § 261.31. Boeing stopped using TCE in 1980. The levels of TCA detected in the groundwater on the Cereghinos' property do not exceed federal drinking water standards. TCE levels do exceed those standards.

*Plaintiffs' Complaint*

Plaintiffs filed this action in January 1992. Their amended complaint, filed in January 1993, asserts that Boeing has owned the industrial site and has operated industrial facilities on that site "from about 1963 to the present, and at all material times thereto...." They also allege that, from 1968 to 1985, ICC, Datron, and Elecspec operated manufacturing facilities on the land owned by Boeing, and that these defendants "used, handled, stored and disposed of hazardous substances, including but not limited to [TCE] and [TCA], in the course of the operation of the manufacturing and/or industrial facilities located on Boeing's land."

Plaintiffs' action against ICC is based on that defendant's alleged control of subsidiaries. As to ICC, plaintiffs' amended complaint includes these assertions not found in the original complaint:

6.

In or about 1968, Electronic Specialty Company, which had previously operated manufacturing facilities at the Boeing property, was merged into defendant ICC and continued operating at the site as either the alter ego or agent of ICC. In about 1971 the same manufacturing operations were transferred to Radiation International, Inc. (RII), a wholly-owned subsidiary of ICC, which operated as the alter ego and/or agent of ICC. Electronic Specialty Company and RII have dissolved and are no longer in existence. During the period they operated at the Boeing property as alter egos or agents of ICC, all earnings, profits and income derived from those operations were under the control of

ICC, which financially drained Electronic Specialty Company and RII, resulting in an inability to perform even routine maintenance.

7.

By express assumption agreement dated July 22, 1971, ICC expressly agreed to assume any and all liabilities of Electronic Specialty Company existing at the date of the agreement or which may accrue or arise by reason of any acts or omissions by Electronic Specialty Company on or before the date of the assumption agreement.

Plaintiffs assert claims of intentional and negligent trespass, intentional and negligent nuisance, and "strict liability/ultrahazardous activity." In their intentional trespass claim, plaintiffs allege that, between 1963 and September 1985, defendants "intentionally caused or contributed to the release of hazardous substances...." Plaintiffs further allege that "Boeing has known of the existence of releases of TCE and TCA at the Boeing property, but concealed that knowledge, and failed to report those releases of which it was aware when requested to do so by the EPA." They add that hazardous substances have migrated into their groundwater, and assert that Boeing's failure to disclose "the existence of known releases of TCE and TCA onto the soils" justifies an award of punitive damages.

In support of their negligent trespass claim, plaintiffs allege that defendants knew or should have known that they were using and handling hazardous substances "in a manner which was substantially certain to result in releases of those hazardous substances into the environment, and onto land owned by third parties."

Plaintiffs' nuisance claim alleges that defendants have unreasonably interfered with plaintiffs' use and enjoyment of their land.

Plaintiffs' ultrahazardous activity claim asserts that defendants' "use, handling, storage and disposal of hazardous substances" constituted an ultrahazardous activity. This claim adds that defendants knew, or in the exercise of reasonable care should have known, that releases resulting from these activities would substantially harm landholders such as themselves.

### STANDARDS FOR EVALUATING MOTIONS FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The moving party may discharge this burden by showing that there is an absence of evidence to support the nonmoving party's case. *Id.* When the moving party shows the absence of an issue of material fact, the nonmoving party must go beyond the pleadings and show that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. at 2553.

The substantive law governing a claim or defense determines whether a fact is material. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987). Reasonable doubts concerning the existence of a factual issue should be resolved against the moving party. *Id.* at 630–31. The evidence of the nonmoving party is to be believed, and all justifiable inferences are to be drawn in the nonmoving party's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1985). No genuine issue for trial exists, however, where the record as a whole could not lead the trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

### DISCUSSION

A. *Boeing's Motions*

Boeing has filed a motion seeking summary judgment in its favor on each of plaintiffs' three claims. At a hearing on these motions, Boeing clarified that it seeks summary judgment only as to the solvent TCE, and not TCA, on the nuisance and trespass claims. Boeing seeks summary judgment as

to both TCE and TCA on the ultrahazardous claim, and as to plaintiffs' claim for punitive damages.

### 1. *Trespass and Nuisance Claims*

██ In trespass and nuisance actions, liability is based on interference with the possession of land. *Martin v. Reynolds Metals Co.*, 221 Or. 86, 90, 342 P.2d 790 (1959), *cert. denied*, 362 U.S. 918, 80 S.Ct. 672, 4 L.Ed.2d 739 (1960). A trespass is an actionable invasion of a possessor's interest in the exclusive possession of land. *Id.* A nuisance is an actionable invasion of a possessor's interest in the use and enjoyment of that land. *Id.* A trespass is intentional if "the acts setting in motion the invasion were done with knowledge that a trespass would result and not that the acts were done for the specific purpose of causing a trespass or injury." *Ream v. Keen*, 112 Or.App. 197, 199, 828 P.2d 1038 (citation omitted), *aff'd*, 314 Or. 370, 838 P.2d 1073 (1992). If their invasion results in damages, intentional trespassers are liable "without proof of further fault...." *Gymnastics USA v. McDougal*, 92 Or.App. 453, 457 n. 4, 758 P.2d 881, *rev. denied*, 307 Or. 77, 763 P.2d 731 (1988). Similarly, nuisance is intentional "if the defendant acts for the purpose of causing the invasion or if he knows that it is resulting or is substantially certain to result from his conduct...." *Gronn v. Rogers Constr., Inc.*, 221 Or. 226, 231, 350 P.2d 1086 (1960).

██ Boeing contends that it is entitled to summary judgment on plaintiffs' intentional trespass and nuisance claims because plaintiffs have produced no evidence either that Boeing's employees or agents intended the solvents to migrate into Boeing's or plaintiffs' groundwater, or that they knew that disposal of the solvents would result in such contamination. I agree. In his deposition, Joseph Cereghino stated that he had no reason to believe that plaintiffs' land had been intentionally contaminated. Though plaintiffs have cited testimony that solvents were intentionally disposed of, they have not shown any evidence that those disposing of the solvents intended to harm plaintiffs' land, or knew that such harm would occur.

Boeing contends that plaintiffs' claims of negligent trespass and nuisance based on TCE contamination are barred by the statute of ultimate repose, Or.Rev.Stat. § 12.115. That statute provides that:

(1) In no event shall any action for negligent injury to person or property of another be commenced more than 10 years from the date of the act or omission complained of.

(2) Nothing in this section shall be construed to extend any period of limitation otherwise established by law, including but not limited to the limitations established by ORS 12.110.

The undisputed evidence is that more than 10 years elapsed between the use of TCE on Boeing's property and the filing of this action.

I initially questioned the proposition that the statute of ultimate repose could bar plaintiffs' negligent trespass and nuisance claims, because it appeared to be inconsistent with a neighboring landowner's ongoing responsibilities, such as that of providing lateral and subjacent support to contiguous property. I continue to find the application of the statute of ultimate repose to the facts of this action somewhat inconsistent with the general obligations of a neighboring landowner and with the growing awareness of the dangers and long-range effects associated with the disposal of hazardous substances as reflected in state and federal environmental statutes. However, after devoting considerable attention and research to this issue, I conclude that the statute of ultimate repose does bar plaintiffs' negligent trespass and nuisance claims against Boeing as to TCE contamination.

This conclusion is based primarily upon the Oregon Supreme Court's explication of the effect of the statute of ultimate repose in *Josephs v. Burns*, 260 Or. 493, 491 P.2d 203 (1971). There, the Court affirmed dismissal of a negligence action brought against the architects and engineers who had supervised construction of a building whose roof had collapsed. Plaintiffs brought their action more than 10 years after defendants had acted, but within two years of the collapse. The Court rejected the plaintiffs' contention

that the statute of ultimate repose did not begin to run until the roof collapsed. *Id.* at 496, 491 P.2d 203. The Court concluded that the words "act or omission complained of" did not relate to the collapse of the roof, noting that "it seems obvious ... that such language refers to the acts of commission or to omissions which are the basis for plaintiffs' claims of defendants' negligence and that the language does not refer to the occurrence of the resulting damage." *Id.* The Court rejected the plaintiffs' contention that the cause of action could not accrue until they had suffered some damage, concluding that, in considering the legislative history of the statute of ultimate repose, "it becomes clear that the inability of the damaged party to bring an action was not intended to prevent the running of the statutory period." *Id.* The Court added that the ten-year limitation was intended to apply regardless of "when the act or omission was discovered." *Id.* at 500, 491 P.2d 203.

Significantly, the *Josephs* Court likewise rejected the plaintiff's contention that the defendants had an ongoing duty to warn of or to take remedial action to repair the defects up to the time of the collapse. The court concluded that

> If the statute was intended to be one of ultimate repose, regardless of circumstances, it would follow that the legislature did not intend the statute to be circumvented by allegations that subsequent to the fundamental wrong, a continuing duty existed to rectify the results of such wrong.

*Id.* at 501–02, 491 P.2d 203.

■ Under *Josephs,* it is clear that the "act or omission" referred to in the statute of ultimate repose is an act or omission of a person, not the act of objects such as hazardous substances. This case also clarifies that the statute begins to run at the time of an *initial* negligent act or omission, and does not refer to any *ongoing* duty to correct the initial wrong. In the present action, plaintiffs' contentions that the "acts" complained of are the invasion of contaminants, and that the omission was the failure to prevent the migration after disposal, therefore fail. The Oregon Supreme Court left no doubt in *Jo-*

*sephs* that potential plaintiffs such as the Cereghinos can be barred from recovery even before they have been harmed.

Plaintiffs contend that Boeing concealed the contamination, tolling the running of the statute of ultimate repose. Plaintiffs assert that, despite its knowledge of improper disposal practices, Boeing "never reported releases of TCE and/or TCA to regulatory authorities as it was required to by law." They add that Boeing failed to mention releases of TCE and TCA when it compiled a list of "all of the releases and spills of substances on their property which might be hazardous" in 1985. Plaintiffs note that some of Boeing's "agents and employees were formerly also agents and employees of defendant ICC and its subsidiaries, Electronic Specialty Company, RII, and Portland Heavy Industries Division, before 1974." Plaintiffs add that some of these persons knew that hazardous wastes had been disposed on the site, and contend that that knowledge should be imputed to Boeing. Plaintiffs also note that some Boeing agents and employees were aware that spills and discharges had occurred in the course of Boeing's operations between 1974 and 1985.

■ Plaintiffs' contentions of concealment do not alter the conclusion that Boeing's motion for summary judgment on the negligent trespass and nuisance claims as to TCE should be granted, because concealment would not toll the statute of ultimate repose. Tolling is an equitable concept, and equitable estoppel "is not available to avoid [the statute of ultimate repose....."] *Beals v. Breeden Bros., Inc.,* 113 Or.App. 566, 572, 833 P.2d 348, *rev. denied,* 314 Or. 727, 843 P.2d 454 (1992). As the *Beals* court observed, a contrary holding "would thwart the legislature's intent to provide an absolute cutoff date for the bringing of such actions." *Id.*

Even if the statute of ultimate repose could be equitably tolled, I would conclude that plaintiffs have not shown the existence of triable issues of fact as to concealment which would defeat the running of the statute. Plaintiffs' contention that Boeing failed to disclose contamination centers on a failure to include TCE and TCA releases in a 1985

report to the Environmental Protection Agency. Even if Boeing had concealed contamination at that point, any tolling of the statute of ultimate repose would continue only for the time that such concealment deprived plaintiffs of knowledge they otherwise would have had. Because this action was not filed until 1992, and Boeing has shown that it used no TCE after 1980, tolling during a less than two-year period would not alter the conclusion that, as to TCE, this action was filed after the statute of ultimate repose had run.

In addition, plaintiffs have shown no evidence that those who they assert failed to inform the "regulatory authorities" of chemical releases knew that the substances could invade Boeing's groundwater and migrate onto the groundwater on plaintiffs' property. In addition, they have not shown that those who knew of releases had an obligation to report those to Boeing managers, either in their capacities as original Boeing employees, or, if they were hired from other entities, after they began working for Boeing. An agent's knowledge is imputed to a principal only if the agent has a duty to reveal the information to the principal. *See* Restatement (2d) Agency, § 275, Comment c. Plaintiffs here have not shown evidence from which a trier of fact could conclude that those who knew of the discharges had an obligation to inform Boeing, to investigate, or to report those discharges to governmental agencies.

### 2. *Ultrahazardous Activity Claim*

██ Strict liability may be imposed on those who engage in "ultrahazardous" activities. An activity is considered ultrahazardous if it is "extraordinary, exceptional, or unusual, considering the locality in which it is carried on; when there is a risk of grave harm from such abnormality; and when the risk cannot be eliminated by the exercise of reasonable care...." *McLane v. Northwest Natural Gas,* 255 Or. 324, 328, 467 P.2d 635 (1970). No Oregon court has decided whether the use of solvents such as TCE and TCA constitutes an ultrahazardous activity.

Boeing has submitted the uncontroverted affidavit of an expert who states that TCE and TCA are commonly-used degreasing agents, and opines that "it is entirely feasible to use both TCA and TCE in ways that would prevent any contamination of soil or groundwater." Boeing has also submitted uncontroverted evidence that use of degreasing solvents is common in the area around its property, and that plaintiffs themselves use solvents in maintenance of their farming equipment.

Boeing has shown the absence of material issues of fact as to whether use of the solvents in question here constituted an ultrahazardous activity. Use of solvents cannot be classified as ultrahazardous in this case and the motion for summary judgment on this claim should be granted.

### 3. *Punitive Damages Claim*

██ In Oregon, punitive damages may not be awarded unless a defendant has engaged in wanton misconduct. *See McGregor v. Barton Sand & Gravel, Inc.,* 62 Or.App. 24, 27, 660 P.2d 175 (1983). Punitive damages may not be assessed for negligent or reckless indifference to the rights of others, but must be based on a deliberate disregard for those rights. *Id.* at 27–29, 660 P.2d 175. As noted above in the discussion of plaintiffs' intentional trespass and nuisance claims, plaintiffs have shown no evidence that those who disposed of the solvents intended that the solvents migrate into plaintiffs' groundwater, or that they knew that their disposal of solvents would result in such contamination. In the absence of this evidence, plaintiffs cannot prevail on a claim for punitive damages.

### B. *Datron's Motions*

Datron moves for summary judgment on all of plaintiffs' claims, and on plaintiffs' claim for punitive damages.

Datron operated an assembly plant on the Boeing site between 1971 and September 15, 1983. As noted above, plaintiffs have not shown the existence of evidence supporting their intentional nuisance and trespass claims. Given the applicable statute of ultimate repose, plaintiffs can prevail on their negligent nuisance and trespass claims against Datron only if they can show that

**1250**

Datron negligently disposed of TCE or TCA after January 21, 1982 (10 years before this action was filed), and before it vacated the site in 1983. Plaintiffs have cited no evidence linking Datron to any disposals occurring during that time, but instead cite only evidence of disposals related to Datron occurring earlier. Datron is therefore entitled to summary judgment on the nuisance and trespass claims.

The above discussion of plaintiffs' ultrahazardous activity claim and claims for punitive damages against Boeing applies equally to these claims against Datron.

### C. *International Controls Corporation's Motions*

Plaintiffs' claims against ICC are based on that corporation's ownership and alleged control of Electronic Specialty Company (ESC) and Radiation International, Inc. (RII). Plaintiff alleges that ICC operated these subsidiaries as "alter egos or agents," and that it "financially drained [ESC] and RII, resulting in an inability to perform even routine maintenance."

ICC has raised a number of issues in support of its motion for summary judgment. These include plaintiffs' failure to properly serve ICC within the period of the statute of limitations, this court's lack of personal jurisdiction over ICC because that corporation has never "done business in Oregon," and ICC's status as a mere shareholder in ESC and RII. ICC's arguments raise a number of complex questions, including whether plaintiffs' amended complaint relates back to the original complaint, whether ICC's actual notice of the original complaint corrects any defect in service, and what degree of control is required to fix a parent with liability for the actions of its subsidiary.

My conclusions concerning the potential liability of Boeing and Datron make it unnecessary to reach these interesting issues. The evidence submitted establishes that ESC ceased its operations in 1971, and that Boeing took over RII's operations in 1974. Even if this court has jurisdiction over ICC, and ICC exercised the control over ESC and RII needed to give rise to potential liability, plaintiffs' intentional nuisance and trespass claims would fail for the reasons discussed above. Plaintiffs' negligence claims would fail as barred by the statute of ultimate repose. Their ultrahazardous activity and punitive damages claims would also fail as discussed above. ICC's motion for summary judgment should be granted.

### CONCLUSION

Defendant Boeing's motion for partial summary judgment (# 32) should be GRANTED. Datron's motion for summary judgment (# 38) should be GRANTED. International Controls Corporation's motion for summary judgment (# 43) should be GRANTED.

DATED this 5th day of March, 1993.